**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | **Case No. 20-cr-00002-DKC-1** |
| **v.** | * | |
| | * | |
| | * | |
| **DION QUEVA DEMPSEY,** | * | |
| | * | |
| | * | |
| **Defendant** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION AND ORDER OF COURT

This matter is before the Court on the defendant's Motion to Set Conditions of Release (the "Motion") (ECF No. 24) and the government's Opposition to Motion to Reopen Detention Hearing (the "Opposition") (ECF No. 28). The issues have been fully briefed, and no hearing is necessary. L.R. 105.6, 207. For the reasons stated below, the Motion is **DENIED.**

## I. PROCEDURAL HISTORY

On January 13, 2020, a federal grand jury returned an indictment charging the defendant with Felon in Possession of Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). An initial appearance was conducted on January 30, 2020, at which the defendant consented to detention. At the request of the defendant, a detention hearing was conducted on February 26, 2020.

## II. BAIL REFORM ACT

Pretrial detention and release are governed by the Bail Reform Act (the "BRA"). 18 U.S.C. §§ 3141 *et seq.* The BRA requires the Court to order the pretrial release of the person "subject to the least restrictive further condition, or combination of conditions, that such judicial officer

determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(1)(B).  If, however, the Court finds after a detention hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court "shall order the detention of the person before trial." *Id.* § 3142(e)(1).  "The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." *Id.* § 3142(f).  On the other hand, where risk of flight is the basis of a detention order, the government must prove by a preponderance of the evidence that no combination of conditions of release will reasonably assure the defendant's presence at future court proceedings. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

The Court's determination is governed by four factors:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1951, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) The weight of the evidence against the person;

(3) The history and characteristics of the person, including –

(A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

III.  REOPENING THE DETENTION HEARING

After hearing from the parties at the detention hearing, the Court reviewed the factors set forth in 18 U.S.C. § 3142(g) and found by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.  Therefore, the Court ordered that the defendant be detained.  *See* Order of Detention Pending Trial (ECF No. 11).  At the present time the defendant is detained in the D.C. Department of Corrections ("DOC") at the Correctional Treatment Facility ("CTF").[1]  The defendant now moves to reopen the detention hearing.  Indeed, under 18 U.S.C. § 3142(f), a detention hearing

> may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

The defendant argues that the detention hearing should be reopened because information exists that was not known to him at the time of the detention hearing, and that this information has a material bearing on the issue of whether there are conditions of release that will reasonably assure his appearance as required and the safety of any other person and the community.  The defendant asserts that "the Correctional Treatment Facility, Washington, D.C. has a significantly larger number of COVID-19 virus inmates and staff [than] most detention and prison facilities within the Bureau of Prisons (BOP) and has suffered several deaths as a result of the virus."  Motion (ECF. 24 ¶ 9).  The defendant does not assert that he has contracted COVID-19 while at CTF or that he

---

[1] Many pretrial detainees from the District of Maryland are detained in CTF and the D.C. Jail, both part of the DOC.

has been exposed to anyone who has tested positive for the virus.  He does not claim that he has not received adequate medical care while housed at CTF.  Notably, unlike many other detainees who recently have filed motions for release in this Court, the defendant does not maintain that, because of a particular physical or mental condition, or advanced age, he is at an increased risk of contracting the virus or suffering severe complications if he does.[2]  *See, e.g.*, *United States v. Wheeler*, Criminal Case No. CCB-19-0455, 2020 WL 2085473 (D. Md. Apr. 30, 2020) (asthma, COVID-19, diabetes); *United States v. Lee*, No. ELH-19-159, 2020 WL 1974881 (D. Md. Apr. 24, 2020) (high blood pressure, obesity, depression*)*; *United States v. Green*, Criminal Case No. CCB-19-0539-1, 2020 WL 1873967 (D. Md. Apr. 15, 2020) (asthma, high blood pressure, chronic obstructive pulmonary disease); *United States v. Williams*, Criminal Case No. PWG-13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020) (advanced age); *United States v. Bilbrough,* Criminal Case No. TDC-20-0033 (D. Md. Mar. 20, 2020) (diabetes), *aff'd*, __ F. Supp. 3d __, 2020 WL 1694362 (D. Md. Apr. 7, 2020); *United States v. Martin*, __ F. Supp. 3d __, Criminal Case No. PWG-19-140-13, 2020 WL 1274857 (D. Md. Mar. 17, 2020) (diabetes, high blood pressure, asthma). Rather, the defendant relies primarily upon a generalized risk of exposure and contraction of COVID-19.

COVID-19 is a worldwide pandemic that has had a profound impact on the health and daily life of millions of people.  According to the Centers for Disease Control and Prevention (the "CDC"), as of July 5, 2020, there were 2,841,906 COVID-19-positive cases in the United States

---

[2] No medical records were submitted in support of the Motion.  Because the defendant does not claim that he has a specific physical or mental condition that puts him at a greater risk of contracting COVID-19, the Court does not find it necessary to obtain his medical records.

and 129,576 deaths related to the virus.[3]  COVID-19 poses special risks for the elderly and those

with certain preexisting medical conditions.  Prisons, jails, and detention centers are especially

vulnerable to outbreaks of COVID-19.  *See Coreas v. Bounds*, __ F. Supp. 3d __, Civil Action No.

TDC-20-0780, 2020 WL 1663133, at *1-2 (D. Md. Apr. 3, 2020).

At the outset, the Court finds that the unprecedented magnitude of the COVID-19

pandemic and the heightened risk of exposure to residents of detention facilities constitute

information not known to the defendant at the time of the detention hearing that has a material

bearing on whether conditions of release can be fashioned to assure the appearance of the

defendant as required and the safety of the community.  *See, e.g.*, *Bilbrough*, Order at 4; *Martin*,

2020 WL 1274857, at *2.  Therefore, the Court finds that the defendant has established a

satisfactory basis to reopen the detention hearing.

Considering that the defendant's basis for reopening the detention hearing concerns new

information regarding the impact that COVID-19 may have on his health, the Court finds the

following comments by United States District Judge Stephanie A. Gallagher in a recent case

particularly instructive:

> Congress carefully prescribed the factors that a court should consider in weighing whether
> a particular defendant should be detained or released before trial.  *See generally* 18 U.S.C.
> § 3142(g).  None of those factors refers specifically to the health of the defendant, or to
> whether the conditions of incarceration threaten the defendant's well-being.  Instead,
> Congress focused the required inquiry on the defendant's risk of nonappearance, and the
> danger that the defendant's release would pose to other individuals.  In some
> circumstances, clearly, a particular defendant's medical condition could reduce that
> defendant's risk of flight or danger to the community, and the health condition would
> therefore fall within the factors appropriately considered in the context of § 3142(g).
> Absent those circumstances, however, a particular defendant's health conditions, and the
> possible risks posed to the defendant by incarceration, do not affect the § 3142(f) and (g)
> analysis.  *See, e.g.*, *United States v. Clark*, 2020 WL 1446895, at *3 (D. Kan. Mar. 25,

---

[3]  *CDC COVID Data Tracker*, Ctrs. for Disease Control & Prevention (July 5, 2020),
https://www.cdc.gov/covid-data-tracker/.

2020) ("A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community.  The risk of harm *to the defendant* does not usually bear on this analysis."); *United States v. Lawton*, Crim. No. CR419-102, 2020 WL 1984897, at *1 (S.D. Ga. April 27, 2020) (same); *United States v. Whyte*, Crim. No. 3:19-cr-64-1 (VLB), 2020 WL 1911187, at *4 (D. Conn. April 8, 2020) (analyzing medical conditions under § 3142(i)); *United States v. Aguirre-Maldonado*, Crim. No. 20-cr-53 (NEB/TNL), 2020 WL 1809180, at *1 (D. Minn. April 9, 2020) ("While the Court appreciates the unprecedented nature of the COVID-19 pandemic, Defendant has offered no reason why the pandemic would reduce his risk of nonappearance or the risk that he poses to the community."); *United States v. Lee*, No. 19-cr-298 (KBJ), 2020 WL 1541049 (D.D.C. March 30, 2020) ("[T]he relevant statutory inquiry [under § 3142(g)] is *not* the benefits that a defendant's release would bring about (however significant) or the harms that his incarceration would cause (however substantial).  Rather, the statute requires the Court to evaluate "*the danger*" that "would be posed *by the person's release*.") (emphasis in original).

*United States v. Gallagher*, Criminal No. SAG-19-0479, 2020 WL 2614819, at *3 (D. Md. May 22, 2020) (alteration in original).

Thus, the Court now engages in a *de novo* review of the factors set forth in 18 U.S.C. § 3142(g), including the new information, to determine if there are conditions of release that could be fashioned to assure the defendant's appearance as required and the safety of the community.

Regarding the nature and circumstances of the offense charged, the defendant is charged with an offense involving a firearm.  *See* 18 U.S.C. § 3142(g)(1).  Regarding the weight of the evidence against the defendant, the Court finds that the weight of the evidence against the defendant is strong.  At the detention hearing on February 26, 2020, the government proffered the following material facts.  On November 22, 2019, federal and local law enforcement officers went to the defendant's residence to arrest him on a fugitive warrant.  The defendant was present in the residence when the officers arrived.  The officers found a loaded handgun in the master bedroom of the residence.  The defendant admitted that the handgun was his.  As discussed below, the

defendant is prohibited from possessing a weapon because of prior convictions.  *See id.* § 3142(g)(2).

Regarding the history and characteristics of the defendant, the Court reviewed the Pretrial Services report that summarized the defendant's residential history and family ties, his employment history and financial resources, his health, and his criminal history.  The defendant is a lifelong resident of the Washington, D.C. area.  Before his incarceration, he resided with his mother, brother, and sister.  He was employed by FedEx.  The Pretrial Services report outlined the following criminal history.  In 2008, the defendant was charged with Assault-Second Degree in Prince George's County, Maryland.  Although the Pretrial Services report indicates that the disposition for that offense was unknown, the government reported that the defendant was, in fact, convicted of Assault-Second Degree and that the offense involved the use of a firearm.  In December 2010, the defendant was convicted of Possession of Regulated Firearm Prohibited Person in Prince George's County, Maryland.  He was sentenced to a period of incarceration of five years, with three years and six months suspended.  He was placed on three years' supervised probation.  In April 2013, he was found in violation of probation.  Probation was terminated unsatisfactorily, and he was sentenced to three years and six months' incarceration.  On February 3, 2012 (while he was on probation for the firearm offense), the defendant was arrested for Conspiracy, Possession of a Machine Gun, and Felon in Possession of a Firearm.  Regarding those charges, he was sentenced in this Court in August 2013 on the charge of Felon in Possession of a Firearm to 70 months' incarceration and three years of supervised release.  In December 2019, the defendant was found in violation of supervised release and sentenced to five months' incarceration.  Notably, the present offense occurred approximately two months after the expiration of the supervised release in that case.  *See id.* § 3142(g)(3).

Finally, regarding the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release, the Court finds that the defendant would pose a serious danger to the community if released.  As noted above, the defendant has two prior convictions for possessing a firearm while prohibited, one of which was in this Court.  He also has been convicted of Assault-Second Degree, which, according the government, involved the use of a weapon.  He committed the second firearms offense while he was on probation for the first, resulting in a violation of probation.  He also violated his supervised release in connection with the second firearms case.  The present offense occurred just two months after the expiration of his term of supervised release.  Thus, if convicted of the present offense, it will be the defendant's third conviction for an offense involving the possession of a firearm when he knew he was prohibited from doing so.  *See id.* § 3142(g)(4).

After reviewing *de novo* the § 3142(g) factors, including the defendant's assertion that CTF has a significantly larger number of COVID-19 virus inmates and staff than most detention and prison facilities within the BOP and has suffered several deaths as a result thereof, the Court affirms its prior finding by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. The defendant does not assert that he has a health condition that heightens his risk of contracting COVID-19 or suffering severe complications if he does.  He does not claim that he has tested positive for the virus or has been exposed to anyone who has.  He does not aver that he has had any health issues that have not been properly treated.  As the government points out, comprehensive precautionary measures have been implemented at CTF to limit the risk of exposure to the virus inside the facility.  *See* Opposition (ECF No. 28 at 6-8).  As of July 5, 2020, there were no positive COVID-19 cases among inmates at CTF.  *See Public Safety Agency COVID-*

*19 Case Data*, Gov't of D.C. (July 5, 2020), https://coronavirus.dc.gov/page/public-safety-agency-covid-19-case-data.  The defendant does not offer any details of his particular situation within CTF that puts him at increased risk or subjects him to inadequate protocols for screening, testing, quarantining, and treatment.  Simply stated, the defendant is a healthy, 28-year-old gentleman who does not suffer from any specific physical or mental condition that could reduce his risk of flight or danger to the community.  As such, the defendant's generalized risk of exposure to COVID-19 does not affect the § 3142(f) and (g) analysis.

## IV.  TEMPORARY RELEASE UNDER § 3142(i)

The Court also considers whether temporary release under 18 U.S.C. § 3142(i) is appropriate.  Under 18 U.S.C. § 3142(i), the Court "may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."[4]

To determine whether the defendant has established "another compelling reason" for temporary release in the midst of the COVID-19 pandemic, the Fourth Circuit has directed the Court to

> consider in the first instance the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a "compelling reason" for temporary release under 18 U.S.C. § 3142(i).

*United States v. Creek*, No. 20-4251, Order at 1 (4th Cir. Apr. 15, 2020).

---

[4] The defendant has not argued that release, temporary or otherwise, is necessary for the preparation of his defense.

In the context of COVID-19, four factors are to be considered in determining whether a compelling reason permitting temporary release under 18 U.S.C. § 3142(i) has been established: (1) the original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that a defendant's release would increase the COVID-19 risks to others. *Green*, 2020 WL 1873967, at \*3 (citing *Clark*, 2020 WL 1446895, at \*3). The defendant has the burden to show that circumstances warranting temporary release under § 3142(i) exist. *United States v. Sanders*, __ F. Supp. 3d __, No. 19-20037-01-DDC, 2020 WL 1528621, at \*3 (D. Kan. Mar. 31, 2020). "The question for the Court is whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those traditional Section 3142(g) factors *and* the COVID-19 health risk to the community that Defendant's release could occasion." *United States v. Hernandez*, No. PX-19-158-9, slip op. at 5-6 (D. Md. Apr. 29, 2020).

As discussed previously, the original grounds for detention weigh heavily against release and need not be repeated here. Regarding the second factor, the defendant does not claim that he has a health condition that increases his risk of contracting COVID-19 or increases his risk of complications if he contracts the virus. Thus, the defendant has not established that the risk that the COVID-19 virus poses to him is greater than the risk faced by all other detainees at CTF. The generalized risk to the defendant must be evaluated in the context of the current conditions at CTF. As of July 5, 2020, the District of Columbia reported that, within the DOC, 207 detainees have tested positive for COVID-19 (none is in isolation for a positive test, and 200 detainees have recovered); 53 detainees are in quarantine; and one detainee has died. *Public Safety Agency COVID-19 Case Data*, Gov't of D.C. (July 5, 2020), https://coronavirus.dc.gov/page/public-

safety-agency-covid-19-case-data.  Further, as of July 5, 2020, 87 DOC staff members have tested positive, none is in quarantine, and one has died.  *Id.*

The DOC has implemented substantial measures to protect detainees from being exposed to COVID-19.  *See DC Department of Corrections' COVID-19 Response FAQs*, DC Dep't of Corr., https://doc.dc.gov/page/coronavirus-prevention (last visited July 6, 2020).  Further, United States District Judge Colleen Kollar-Kotelly has ordered the DOC to take additional actions at the DOC facilities to protect detainees, including triaging sick call requests, implementing social distancing policies, and ensuring that DOC staff are equipped with personal protection equipment. *See Banks v. Booth*, Civil Action No. 20-849(CKK), 2020 WL 1914896, at *13-15 (D.D.C. Apr. 19, 2020).  Notably, Judge Kollar-Kotelly did not order the release of any inmates detained in DOC facilities.  *Id.* at *13.  The implementation of Judge Kollar-Kotelly's order should eventually alleviate the risks cited by the defendant.  *See United States v. Sagastume-Galicia*, No. 19-mj-287 (BAH), 2020 WL 2486423, at *5 (D.D.C. Apr. 22, 2020) (expressing confidence that the DOC will do everything it can to comply with the Order).

Finally, regarding the final two *Clark* factors, the defendant proposes that he be released to the custody of his mother and be allowed to reside with her.  He does not present, however, any information regarding the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant or the likelihood that the defendant's release would increase the COVID-19 risks to others.  For example, the defendant does not provide a plan on how he would get from the Baltimore Courthouse to the proposed residence.  In regard to his mother and other regular occupants of the proposed residence, he does not provide any information regarding their names, ages, relationship to the defendant, any COVID-19 relevant health conditions, criminal history, and employer (including type of work and typical hours outside of

the residence).  He does not provide any information regarding the availability of appropriate space within the residence for quarantine of the defendant upon release (or should he subsequently become symptomatic or test positive for COVID-19).  Finally, he does not provide a plan for providing medical care to the defendant, if needed.

For these reasons, when balanced against the § 3142(g) factors, the Court does not find that the risk that the COVID-19 virus poses to the defendant, given his existing medical condition and the current COVID-19 situation at CTF, rises to the level of a "compelling reason" for temporary release under 18 U.S.C. § 3142(i).

## **ORDER**

Accordingly, it is this 6th day of July 2020, hereby **ORDERED** that the defendant's Motion to Set Conditions of Release (ECF No. 24) is **DENIED**.


Date: July 6, 2020                                        _____/s/_____
                                                                      Thomas M. DiGirolamo
                                                                      United States Magistrate Judge